United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 20, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-31585** |
| **PEARL RESOURCES LLC** | § | |
| **and** | § | **CHAPTER 11** |
| **PEARL RESOURCES OPERATING CO. LLC,** | § | |
| | § | |
| Debtors. | § | |
| | § | |
| **PEARL RESOURCES OPERATING CO. LLC** | § | |
| **and** | § | |
| **PEARL RESOURCES LLC,** | § | |
| **,** | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 22-3297** |
| | § | |
| **TRANSCON CAPITAL, LLC,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

Pursuant to the Texas Property Code §§ 56.041 and 53.156, Pearl Resources LLC and Pearl Resources Operating Co. LLC seek their attorney's fees and costs incurred in invalidating a mineral property lien placed on their mineral property by Transcon Capital, LLC, and declaratory relief that Transcon Capital, LLC's proof of claim was based on fraudulent invoices and is barred by the doctrine of res judicata.[1] Transcon Capital, LLC, seeks payment from Pearl Resources LLC and Pearl Resources Operating Co. LLC for services provided for their benefit on a mineral property lease owned by Pearl Resources LLC and Pearl Resources Operating Co. LLC, based on

---

[1] ECF No. 22 at 14.

a theory of recovery of quantum meriut.[2]  Further, Transcon Capital, LLC seeks its attorney's fees and costs pursuant to § 38.001 of the Texas Civil Practice and Remedies Code.[3]

A trial was conducted on January 24, 2024. After considering the pleadings on file, evidence in the record, credibility of the witnesses, arguments of counsel and applicable law, Transcon Capital, LLC's counterclaim for quantum meruit is denied. Furthermore, the Court finds that Transcon Capital, LLC's proof of claim was based on fraudulent invoices. As such, Pearl Resources LLC and Pearl Resources Operating Co. LLC's Amended Objection to Transcon's Amended Proof of Claim 2-2 is sustained. Transcon Capital, LLC's proof of claim Number 2-2 in 20-31585 for $103,717.08 is disallowed in its entirety. Transcon's affirmative defenses of failure to state a claim, mootness, and the statute of limitations, are each denied. Pearl's request for reasonable attorney's fees pursuant to Tex. Prop. Code §§ 56.041 and 53.156 is granted.

## I.  FINDINGS OF FACT

### A.  Background

1. Pearl Resources LLC and Pearl Resources Operating Co. LLC (the "*Debtors, Pearl or Plaintiffs*") are the owners of a mineral property lease known as the Garnet State Lease in Pecos County, Texas (the "*Garnet State Lease*"). [4]

2. Pearl Resources Operating Co. LLC was the operator of the Garnet State #4 Well on the Garnet State Lease.[5]

3. On September 13, 2016, Pearl Operating entered into a Turnkey Drilling Contract (the "*Turnkey Contract*") with PDS Drilling, LLC ("*PDS*") to drill the Garnet State #4 Well.[6]

4. By October 26, 2016, PDS had drilled to about 2600 feet when freshwater from the Capitan Reef Formation Aquifer began to blow out of the Well.[7]

---

[2] ECF No. 40 at 2.
[3] ECF No. 40 at 2.
[4] ECF No. 40 at 6.
[5] ECF No. 40 at 6.
[6] ECF No. 40 at 7.
[7] ECF No. 40 at 7.

5. Cannon Oil & Gas, LLC ("*Cannon*") provided water hauling and disposal services to the Well site.[8]

6. On March 6, 2017, Pearl Operating filed a Form W-3 with the Texas Railroad Commission ("*RRC*") certifying that the Well had been cemented in and was plugged and abandoned.[9]

7. No written agreement existed between Transcon Capital, LLC ("*Transcon*") or Cannon and PDS for the services Cannon provided to the Well site.[10]

8. Cannon invoiced PDS for the services provided and sent all of its invoices to PDS at its Sugar Land, Texas address.[11]

9. Cannon assigned its rights in certain of Cannon's invoices to Transcon.[12]

10. PDS did not pay the full amount of Cannon's invoices. PDS only paid approximately $12,392 in partial satisfaction of the amount owed to Cannon.[13]

11. Based on Cannon Invoice Nos. 1152 and 1154, Transcon claimed a mineral property lien on Debtors' mineral property.[14]

12. Transcon's mineral property lien claim has been declared invalid and unenforceable pursuant to TEX. PROP. CODE § 56.043 as determined by the El Paso Court of Appeals which reversed the judgment of the District Court of Pecos County, Texas.[15]

13. On October 2, 2019, the trial court granted the motion to sever and entered a "Corrected Final Judgment" which declared that Transcon's mineral property lien against Debtors' property was valid, awarded an order of sale for foreclosure of the lien; ordered a sale and writ of possession directing the proceeds of the sale be applied against the judgment; and awarded Transcon pre-judgment and post-judgment interest, attorney's fees and costs of court, but did not award money damages. The judgment contained a "Mother Hubbard" clause stating that it "disposes of all parties and all claims in this cause of action and is therefore final and appealable."[16]

14. Prior to Debtors filing for bankruptcy in March of 2020, Debtors had filed a Notice of Appeal from the Corrected Final Judgment and the case was pending in Appeal No. 08-19-00288-CV; Pearl Resources Operating Co. LLC and Pearl Resources LLC v. Transcon Capital, LLC; in the Court of Appeals for the Eighth District of Texas in El Paso (the

---

[8] ECF No. 40 at 7.
[9] ECF No. 40 at 7.
[10] ECF No. 40 at 7.
[11] ECF No. 40 at 7.
[12] ECF No. 40 at 7.
[13] ECF No. 40 at 7.
[14] ECF No. 40 at 7.
[15] ECF No. 40 at 8.
[16] *See* Bankr. Claim 2-1 at 4-7.

"*Transcon Appeal*"). Subsequently, Debtors filed a suggestion of bankruptcy in Pecos County District Court and in the El Paso Court of Appeals staying all proceedings. Debtors objected to Transcon's claim asserting that Transcon was a mineral subcontractor with respect to Debtors such that no amount was due to Transcon from Debtors pursuant to TEX. PROP. CODE § 56.043, that the claim was based on false or fraudulent invoices and that the claim should be disallowed for the reasons set forth in the attached Amended Motion for Partial Summary Judgment and Response to Cross-Motion for Summary Judgment previously filed in state district court.[17]

15. On March 3, 2020, Debtors filed for relief under chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court, Southern District of Texas, Houston Division (the "*Petition Date*").[18] Among other pending claims, Debtors sought relief from recorded mineral property liens and related state court claims made by subcontractors in the aftermath of a wild well incident on Debtors' property at the Garnet State No. 4 Well in Pecos County Texas.

16. On March 10, 2020, an order authorizing joint administration of these cases was entered.[19]

17. On April 2, 2020, Transcon filed a proof of claim against only Pearl Resources.[20] Transcon's proof of claim was based entirely on the previously obtained Corrected Final Judgment. Transcon was the assignee of a mineral subcontractor and was involved in litigation pending in state district court in Pecos County, Texas. Debtors sued Transcon asserting that Transcon's claimed mineral property lien was invalid under Chapter 56 of the Texas Property Code and sought their attorney's fees. Transcon counterclaimed for declaratory judgment that its mineral property lien was valid and also sought relief in quantum meruit. Debtors and Transcon moved for summary judgment. After hearing, the trial court entered an Interlocutory Summary Judgment that granted Transcon's motion for summary judgment, denied Debtors' motion for partial summary judgment, and awarded money damages. Transcon moved to sever its claims against Debtors so that the Interlocutory Summary Judgment could become final and Transcon could pursue foreclosure on Debtors' mineral property.

18. On June 30, 2020, Debtors and Transcon announced that they had reached an agreement to allow the parties to pursue the Transcon Appeal.[21]

19. On July 15, 2020, the Court entered an Agreed Order Abating Debtors' Objection to Proof of Claim Filed by Transcon Capital, LLC, and Setting Status Conference.[22]  Pursuant to that order, "Transcon's Claim and Debtor's Objection thereto (a contested matter) [were]

---

[17] ECF No. 40 at 5.

[18] Bankr. ECF No. 1. Citations to Debtors' Bankruptcy case, 20-31585 are shown as "Bankr. ECF No. ___".

[19] Bankr. ECF No. 27.

[20] *See* Bankr. Claim 2-1 at 4-7.

[21] ECF No. 40 at 6-8.

[22] Bankr. ECF No. 194.

ABATED, pending prosecution and resolution of the Appeal as necessary and in accordance with any opinion issued by the Eighth Court of Appeals."[23]

20. On February 17, 2022, the El Paso Court of Appeals entered its opinion and judgment reversing the trial court's judgment in favor of Transcon, rendering judgment for Debtors that Transcon's mineral property lien claim was invalid and further rendering a take-nothing judgment on Transcon's counterclaim. The Court of Appeals also remanded "the case to the trial court for consideration of granting Attorney's fees to Appellants [Debtors] given this ruling." [24]

21. On August 12, 2022, Plaintiffs filed the instant adversary proceeding and amended it on February 24, 2023 (the "*Complaint*").[25]

22. On February 7, 2023, the Court entered its order granting Transcon leave to amend its proof of claim originally filed on April 2, 2020 to name both Debtors and more particularly state its claim as a general unsecured claim. [26]  At the same time, the Court ordered that Transcon must file its proof of claim by February 10, 2023 and that Debtors must file their objections to Transcon's amended proof of claim, amend their schedules to reflect a potential fraud claim against Transcon and file an amended complaint in the above-referenced adversary proceeding.[27]

23. Debtors incurred attorney's fees and costs in seeking a declaration that Transcon's mineral property lien was invalid or unenforceable and appealing from the state district court's final judgment. [28]

24. The El Paso Court of Appeals remanded the case for consideration of whether to grant attorney's fees to Pearl. [29]

25. The El Paso Court of Appeals awarded Debtors all costs of appeal. [30]

26. The amount claimed by Transcon under Cannon Invoice No. 1152 is $28,212.39.[31]

27. The amount claimed by Transcon under Cannon Invoice No. 1154 is $62,841.00.[32]

---

[23] *Id.*
[24] Bankr. ECF No. 324.
[25] ECF Nos. 1 and 22.
[26] Bankr. ECF No. 361.
[27] *Id*.
[28] ECF No. 40 at 6.
[29] ECF No. 40 at 5.
[30] ECF No. 40 at 5.
[31] ECF No. 40 at 8.
[32] ECF No. 40 at 8.

28. Debtors would be entitled to an offset and credit in the amount of $12,392.00 for payments received on Invoice Nos. 1152 and/or 1154 on Transcon's proof of claim.[33]

29. Debtors would be entitled to an offset and credit in the amount of $5,807.39 for state sales taxes charged on Invoices Nos. 1152 and 1154 on Transcon's proof of claim.[34]

30. Debtors would be entitled to an offset and credit for an over charge of 200 barrels invoiced at a rate of .95 per barrel for a total offset and credit for $190.00 on Transcon's proof of claim.[35]

31. On February 10, 2023, Transcon Capital, LLC ("*Transcon or Defendant*") filed Proof of Claim Number 2-3 in 20-31585 for $103,717.08 ("*POC*").[36]

32. On March 10, 2023, Transcon filed its answer and raised affirmative defenses.[37]

33. A one-day trial was conducted on January 24, 2024.[38]

## II. CREDIBILITY OF THE WITNESSES

It is the Court's duty to assess and weigh the credibility of witnesses.[39] At the trial, the Court heard testimony from two witnesses: (a) Dr. Dria and (b) Tye Christensen. After observing the witness and listening to their testimony, the Court makes the following observations regarding the credibility of the witnesses, as set forth below.

### a. Dr. Dria

Dr. Dria is the sole owner of Pearl Resources LLC and the manager of Pearl Resources Operating Co. LLC.[40] Dr. Dria has a doctorate in petroleum engineering from the University of

---

[33] ECF No. 40 at 8.
[34] ECF No. 40 at 8.
[35] ECF No. 40 at 6-8.
[36] *See* 20-31585 Claims Register.
[37] ECF No. 23.
[38] January 24, 2024, Min. Entry.
[39] *O'Connor v. Burg (In re Burg)*, 641 B.R. 120 (Bankr. S.D. Tex. 2022); *In re Bigler LP*, 458 B.R. 345, 367 (Bankr. S.D. Tex. 2011) (citing *Port Arthur Towing Co. v. John W. Towing, Inc. (In re Complaint of Port Arthur Towing Co.)*, 42 F.3d 312, 318 (5th Cir. 1995)).
[40] ECF No. 22 at 9.

Texas.[41] At trial, Dr. Dria responded to questions clearly, completely, and directly.[42] Thus, the Court finds that she is very credible witness and gives substantial weight to her testimony.

### b.  Tye Christensen

Mr. Tye Christensen is the registered agent, president, and manager of Transcon Capital, LLC.[43] At trial, Tye Christensen responded to questions clearly, completely, and directly.[44] Thus, the Court finds that he was a very credible witness and also gives substantial weight to his testimony.

### III.  JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under Title 11 or arising in or related to cases under Title 11."[45] An adversary proceeding falls within the Court's "related to" jurisdiction if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[46] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[47] This Court determines that Plaintiffs' claims are core pursuant to 28 U.S.C. §

---

[41] *Id.*

[42] *See, e.g., In re Ali*, 2015 Bankr. LEXIS 2443, 2015 WL 4611343 at *4 (Bankr. W.D. Tex. July 23, 2015) (analyzing the clarity, completeness, and quality of witness responses in order to make credibility determinations).

[43] ECF No. 44-27.

[44] *See, e.g., In re Ali*, 2015 Bankr. LEXIS 2443, 2015 WL 4611343 at *4 (Bankr. W.D. Tex. July 23, 2015) (analyzing the clarity, completeness, and quality of witness responses in order to make credibility determinations).

[45] 28 U.S.C. § 1334.

[46] *Tex. Gen. Land Office v. Pearl Res. LLC (in re Pearl Res. LLC)*, Nos. 20-31585, 20-3169, 2022 Bankr. LEXIS 2337, at *8 (Bankr. S.D. Tex. 2022); *In re Trevino*, 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).

[47] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

157(b)(2)(A), and (B) because this adversary proceeding involves primarily core matters as it concerns administration of the estate, and allowance or disallowance of claims against the estate.[48]

Furthermore, this Court may only hear a case in which venue is proper.[49] Pursuant to § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."[50] Debtors' main chapter 11 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.

This Court must evaluate whether it has the constitutional authority to enter a judgment in this case. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[51] This Court has the constitutional authority to enter a final judgment here because this is a core proceeding and there is no *Stern* issue. Interpreted narrowly, *Stern* is limited to one specific core proceeding, § 157(b)(2)(C), stripping bankruptcy courts of constitutional authority to enter a final judgment where a state law counterclaim is not resolved in the process of ruling on a creditor's proof of claim.[52] Section 157(b)(2)(C) is not implicated in this proceeding, so this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final judgment here.[53]

Alternatively, even if *Stern* applies to all of the categories of core proceedings, this Court still concludes that *Stern* does not prohibit this Court from entering a final judgment in this dispute.

---

[48] 28 U.S.C. § 157(b)(2); *see also In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").
[49] 28 U.S.C. § 1408.
[50] 28 U.S.C. § 1409(a).
[51] 564 U.S. at 503.
[52] ECF Nos. 12, 13, 14, and 41.
[53] *Id.*

In *Stern*, the debtor filed a counterclaim based solely on state law, and the resolution of this counterclaim did not resolve the validity or invalidity, of the claim held by the defendant. Here, Plaintiffs' claims, despite requiring application of state law, arise from an express Code provision and an express Bankruptcy Rule: § 502(a) and Rule 3007. Moreover, while Defendant's counterclaims do not involve express bankruptcy provisions, unlike *Stern*, application of state law to this provision will resolve the validity or invalidity of the claims that Defendant asserts against Debtors' chapter 11 estates. This suit is therefore easily distinguishable from the dispute in *Stern*, and this Court is constitutionally authorized to enter a final judgment. Additionally, both Plaintiffs[54] and Defendant[55] have consented to entry of final order or judgment by the Bankruptcy Court. This express consent also provides the Court constitutional authority to enter a final judgment.[56] This Court is therefore constitutionally authorized to enter a final judgment.

## IV. ANALYSIS

In its Amended Complaint, Pearl first seeks declaratory relief that Transcon's quantum meruit claim is barred by the doctrine of res judicata, or in the alternative, a finding that the claim is without merit.[57] Pearl next seeks declaratory relief that the invoices on which Transcon bases its amended proof of claim were issued as a result of fraud or negligent misrepresentation and that Transcon's amended proof of claim should be disallowed, to which Transcon asserts three affirmative defenses, to wit: (1) failure to state a claim; (2) mootness; and (3) statute of

---

[54] ECF No. 24 ("Pearl consents to entry of final orders or judgment by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.").

[55] ECF No. 25 ("Transcon consents to entry of final orders or judgment by the Bankruptcy Court and consents to the entry of final orders or judgment by the Bankruptcy Judge if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.").

[56] *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1944–47, 191 L.Ed.2d 911 (2015) and *In re Delta Produce, L.P.*, 845 F.3d 609, 617 (5th Cir. 2016).

[57] ECF No. 22 at 14-15.

limitations.[58] Last, Pearl seeks its attorney's fees pursuant to Tex. Prop. Code §§ 56.041 and 53.156 incurred in rendering Transcon's mineral lien invalid.[59] The Court will first address Transcon's quantum meruit claim.

## A. Transcon's Quantum Meruit Claim

Pearl asserts the Transcon's quantum meruit claim should be denied on four separate grounds, to wit: (1) Transcon's quantum meruit claim is barred by the doctrine of res judicata;[60] (2) Transcon does not have prudential standing to bring a quantum meruit claim;[61] (3) Transcon has failed to establish the elements of a quantum meruit claim; and (4) an implied-in-fact contract existed between Cannon Oil & Gas, LLC ("*Cannon*") and Pearl's mineral contractor, PDS Drilling, LLC, ("*PDS*").[62] The Court will address each in turn.

### 1. Res Judicata

Pearl first asserts that because the El Paso Court of Appeals entered a take-nothing judgment on Transcon's counterclaim, this Court should enter a declaratory judgment that Transcon's quantum meruit claim is barred by doctrine of res judicata.[63]

The elements of res judicata are well settled in the Fifth Circuit and are as follows: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.[64]

In *Pearl Resources Operating Co. LLC v. Transcon Capital, LLC*, the El Paso Court of Appeals rendered judgment for Pearl, finding Transcon's mineral lien was invalid, and entered a

---

[58] ECF No. 22 at 14-15; ECF No. 23 at 13-14.
[59] ECF No. 22 at 14-15.
[60] ECF No. 22 at 15-16.
[61] January 24, 2024 – Courtroom Hearing (Opening Argument).
[62] ECF No. 40 at 11-12.
[63] ECF No. 22 at 15-16.
[64] *BVS Constr. V. Prosperity Bank* (*In re BVS Constr., Inc.*), 18 F.4th 169, 173 (5th Cir. 2021).

take-nothing judgment on Transcon's counterclaim against Pearl.[65] Nevertheless, the Court of Appeals specifically declined to address the quantum meruit claim, because the trial court's corrected final judgment only granted relief germane to the lien on summary judgment, and the trial court had severed the remaining claims.[66] As such, because the Court of Appeals decision pertained only to the declaratory and related ancillary relief sought by Transcon for its mineral lien claim, this Court finds the quantum meruit claim was not concluded by a final judgment on the merits. Accordingly, Pearl's request that this Court should enter a declaratory judgment that Transcon's quantum meruit claim is barred by doctrine of res judicata is denied. This Court will next determine whether Transcon has prudential standing to bring a quantum meruit claim.

## 2. Prudential Standing

Pearl next asserts that Transcon does not have prudential standing to bring a quantum meruit claim because Transcon merely has a right to payment of Cannon's invoices, and there is no evidence suggesting that Cannon assigned its right to pursue a quantum meruit claim to Transcon.[67] Specifically, Pearl asserts that Transcon lacks prudential standing because it is not the "real party in interest" as required by Federal Rule of Civil Procedure 17(a), made applicable by Federal Rule of Bankruptcy Procedure 7017.[68] Both Pearl and Transcon stipulated that "Cannon assigned its rights in certain of Cannon's invoices to Transcon."[69] However, Pearl disputes whether "Cannon assigned its rights in Invoice Nos. 1152 and 1154 to Transcon, and whether Cannon assigned any rights beyond a right to payment."[70]

Prudential standing requirements exist in addition to the immutable requirements of Article

---

[65] 641 S.W.3d 851, 861 (Tex. App.—El Paso 2022).
[66] *Id.*
[67] January 24, 2024 – Courtroom Hearing (Opening Argument).
[68] FED. R. CIV. P. 17; FED. R. BANKR. P. 7017.
[69] ECF No. 40 at 7.
[70] ECF No. 40 at 11.

III as an integral part of judicial self-government.[71] One principle of prudential standing requires that a plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.[72]

Transcon asserts that its stipulation is sufficient to demonstrate that it has prudential standing to assert its quantum meruit claim.[73] Transcon failed to demonstrate however, whether Cannon assigned all rights and claims it had, including its quantum meruit claim, or merely the right to payment of the assigned invoices.[74] As such, this Court finds that Transcon failed to demonstrate that it has prudential standing for its quantum meruit claim. Nevertheless, even if Transcon did have prudential standing, Transcon cannot satisfy the elements of quantum meruit as discussed *infra*.

### 3. Quantum Meruit

Transcon asserts that is has a right to recover under a quantum meruit theory for services performed by Cannon on the Well site owned by Pearl.[75]

Quantum meruit is an equitable remedy that is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted."[76] To succeed on a quantum meruit claim requires the plaintiff to prove that (1) valuable services were rendered or materials furnished, (2) the services or materials were provided for the defendant, (3) the services and materials were accepted by the defendant, and (4) under circumstances in which the person sought to be charged was reasonably notified that the plaintiff was expecting to be paid for those services or materials.[77] The measure of damages for recovery under a quantum meruit theory is the reasonable value of

---

[71] *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009).
[72] *United States v. Johnson*, 632 F.3d 912, 919-20 (5th Cir. 2011).
[73] January 24, 2024 – Courtroom Hearing (Closing Argument).
[74] *See* ECF No. 40.
[75] ECF No. 40 at 13.
[76] *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005).
[77] *Pearl Resources v. Charger Services*, 622 S.W.3d 106, 120-21 (Tex. App.–El Paso 2020, pet. denied).

the work performed and the materials furnished.[78]

Transcon's claim for quantum meruit fails to establish that Pearl was reasonably notified as the person sought to be charged.[79] Transcon first alleges that Pearl was reasonably noticed because some of the field tickets created by Cannon, mentioned Pearl.[80] However, these specific tickets were all the product of a single employee, and on some of the tickets Pearl's name was crossed off and replaced with PDS, or included both Pearl and PDS.[81] Nevertheless, these field tickets were utilized in constructing the overarching invoices sent to PDS, for the services requested by PDS.[82] These few tickets fail to demonstrate reasonable notice that Pearl was the person sought to be charged.

Transcon next alleges that emails between Dr. Dria and Transcon demonstrate that Pearl was reasonably notified as the person sought to be charged.[83] However, the emails demonstrate that Pearl was not to be charged for work completed on behalf of PDS,[84] and that the Cannon invoices were owed by PDS.[85] These emails fail to demonstrate reasonable notice that Pearl was the person sought to be charged.

Transcon last asserts that because Dr. Dria's husband, Dr. Dennis Dria, was occasionally near the well site, Pearl would have reasonable notice that Cannon would expect payment from Pearl.[86] However, Dr. Dennis Dria is not an employee, owner, or manager/member of either Pearl entity, nor did he have any authority to act on behalf of Pearl.[87]  His occasional presence at the

---

[78] *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 733 (Tex. 2018).
[79] *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990).
[80] ECF 45-21 at 47-56.
[81] ECF 45-21 at 47-56.
[82] ECF No. 44-17.
[83] ECF No. 45-14, 45-15, 45-16.
[84] ECF No. 45-15.
[85] ECF No. 45-16, 45-13.
[86] January 24, 2024 – Courtroom Hearing (Closing Argument).
[87] January 24, 2024 – Courtroom Hearing (Dr. Myra Dria testifying).

Well site being for consulting purposes was uncontroverted, and no evidence suggests that he was told by Cannon anything that would demonstrate that Pearl was reasonably notified as the person sought to be charged.[88]

As such, Transcon has failed to demonstrate that Pearl had any reasonable notice that Cannon was expecting to be paid for those services or materials from Pearl. Since Transcon has failed to show that it sought to be paid by Pearl, Transcon has not met its burden in proving an essential element of quantum meruit.

Accordingly, Transcon's claim for quantum meruit is denied.

### 4. An implied-in-fact contract existed between Cannon and Pearl's mineral contractor, PDS

Pearl asserts that the existence of an implied-in-fact contract between Cannon and PDS prohibits recovery under a quantum meruit theory.[89] Because existence of a contract is an affirmative defense in a quantum meruit claim, defendant has the burden of proving all vital facts in support of the issue.[90] However, as discussed *supra*, this Court has denied Transcon's claim for quantum meruit on the merits and therefore finds this affirmative defense to be moot.

Accordingly, Pearl's affirmative defense that an implied-in-fact contract existed between Cannon and Pearl is denied as moot. The Court will next determine the validity of Transcon's proof of claim.

### B. Transcon's proof of claim

Section 502 provides that "a claim or interest, proof of which is filed under § 501 of this title, is deemed allowed, unless a party in interest . . . objects."[91] The legislative history of § 502

---

[88] January 24, 2024 – Courtroom Hearing (Dr. Myra Dria testifying).
[89] ECF No. 40.
[90] *See Pearl Resources v. Charger Services*, 622 S. W.3d 106, 116 (Tex. App.–El Paso 2020, pet. denied).
[91] 11 U.S.C. § 502(a).

provides in relevant part, that "a proof of claim or interest is prima facie evidence of the claim or interest. Thus, it is allowed under subsection (a) unless a party in interest objects."[92] While § 502 addresses the form and content of claims it does not, by itself, establish grounds for disallowance of a claim.[93] Rather, Bankruptcy Rule 3001 allocates the burden of proof with respect to a proof of claim for which an objecting party has raised an objection that would warrant disallowance under § 502.[94]

The court in *In re DePugh* described the interplay between § 502 and Bankruptcy Rule 3001 during a proof of claim dispute.[95] If, for example, a creditor files a proof of claim in full compliance with Bankruptcy Rule 3001, that claim is deemed prima facie valid and, if the debtor objects to that claim, he or she must produce evidence sufficient to rebut the presumption of validity and establish that the claim should be disallowed pursuant to § 502(b).[96] If, however, a creditor files a proof of claim that fails to comply with Bankruptcy Rule 3001, the Debtor has no evidentiary burden to overcome when lodging a claim objection pursuant to § 502(b), at which point the burden shifts back to the claimant to prove the underlying validity of its claim by a preponderance of the evidence in order to have its claim allowed.[97]

Bankruptcy Rule 3001 requires that a proof of claim: (1) be in writing; (2) make demand on the debtor's estate; (3) express the intent to hold the debtor liable for the debt; (4) be properly filed; and (5) be based upon facts which would allow, as a matter of equity, to have the document

---

[92] House Rep. No. 95-595, 95th Cong., 1st Sess. 351 (1977); Senate Rep. No. 95-989, 95th Cong., 2d Sess. 62 (1978); *In re Northbelt, LLC*, 630 B.R. 228, 247 (Bankr. S.D. Tex. 2020).
[93] *In re Tran*, 369 B.R. 312, 320 (S.D. Tex. 2007) ("In other words, courts must generally allow a properly filed claim, but if one of the nine statutory provisions governs, then the court may summarily disallow the claim.").
[94] Fed. R. Bankr. P. 3001.
[95] *In re DePugh*, 409 B.R. 84, 97-98 (Bankr. S.D. Tex. 2009).
[96] *Id.*
[97] *Id.*; *see* 11 U.S.C. § 502; *In re O'Connor*, 153 F.3d 258, 260-61 (5th Cir. 1998); *In re Fid. Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988).

accepted as a proof of claim.[98]

On April 2, 2020, Transcon filed a proof of claim against Pearl based on its state court judgment against Pearl.[99]  Thereafter, Transcon amended its proof of claim to clarify that the basis of its claim against Pearl stemmed from leasehold services furnished to the Debtors.[100] These claims each expressed an intent to hold Pearl liable for the debt by listing Pearl as the debtor against whom they wish to recover.[101] Furthermore, amended proof of claim 2-2 was properly filed using Official Form 410 and contained a copy of the relevant invoices, as required by Bankruptcy Rule 3001(c)(1) since the claims were based on a writing.[102] Finally, the facts upon which these proofs of claim are based on Transcon's claim against the Debtors for the Debtors' alleged failure to pay Cannon for work done pursuant to unpaid invoices.[103]

Accordingly, Proof of Claim Number 2-2, having been filed in full compliance with Bankruptcy Rule 3001, is deemed prima facie valid.

On May 20, 2020, Pearl filed an Objection to Claim Numbers 2.[104] Pearl later filed an Objection to Transcon's Amended Claim Number 2-2 on March 3, 2023.[105] Pearl contests the prima facie validity the Claim.[106] As such, Pearl must produce evidence sufficient to rebut the presumption of validity and establish that each Claim should be disallowed pursuant to § 502(b).[107] If Pearl fails to do so, the Claims will be allowed.[108]

**1. The validity, priority, or extent of Transcon's Amended Claim**

---

[98] *In re Armstrong*, 320 B.R. 97, 103-04 (Bankr. N.D. Tex. 2005).
[99] 20-31585 Claims Register.
[100] ECF No. 40 at 6.
[101] *Id.*
[102] *Id.*; FED. R. BANKR. P. 3001(c)(1).
[103] ECF No. 40.
[104] 20-31585 at ECF No. 120.
[105] 20-31586 at ECF No. 32.
[106] *In re DePugh*, 409 B.R. at 97-98.
[107] *Id.*
[108] *Id.*

Pearl asserts that Transcon's Amended Claim is based on invoices that are the result of fraud or negligent misrepresentation.[109] When a claim objection is made, the Court, after notice and a hearing, shall determine the amount of such claim and shall allow such claim except to the extent that, *inter alia*, such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.[110] Specifically here, Pearl asserts that (1) the invoices fraudulently charged sales tax, and (2) the invoices misrepresented the services provided.[111] The Court will address each in turn.

### a. The Invoices Fraudulently Charged Sales Tax

Pearl first asserts that Transcon's Amended Claim is invalid because, contrary to Texas regulations defining taxable services, the invoices charged Texas state sales tax on water hauling services.[112] Pearl's assertion concludes that Cannon, the assignee, and creator of the invoices, fraudulently or negligently misrepresented the amount due on the invoices by including sales tax that was not due.[113]

The Texas Natural Resources Code defines oil and gas waste to include "salt water [and] brine," thus rendering water hauling services as tax exempt under Texas Administrative Code § 3.356(a)(3).[114]

The services provided to PDS were water hauling services, and the applicable invoices indicate an assessed sales tax at 6.8125% each.[115] As such, this Court finds that Cannon failed to

---

[109] ECF No. 40 at 6.
[110] 11 U.S.C. § 502(b)(1).
[111] ECF No. 22 at 14-15.
[112] ECF No. 40 at 9; 34 TEX. ADMIN. CODE § 3.356(a)(3) (excluding from the definition of "garbage or other solid waste" any "waste materials which result from activities associated with the exploration, development, or production of oil, gas, geothermal resources, or any other substance or material regulated by the Railroad Commission of Texas pursuant to Natural Resources Code, § 91.101").
[113] ECF No. 22 at 15.
[114] TEX. NAT. RES. CODE § 91.101(4); TEX. ADMIN. CODE § 3.356(a)(3).
[115] ECF No. 44-17 at 6, 46.

comply with Tex. Admin. Code § 3.356(a)(3).[116]

### b. The Invoices Misrepresented the Services Provided

Pearl next asserts that Transcon's Amended Claim is invalid because the invoices fraudulent or negligently misrepresented the services actually provided by Cannon.[117] Specifically, Pearl asserts that the invoices repeatedly indicated that Cannon had hauled loads containing 130 barrels of water, meanwhile the corresponding disposal and delivery tickets show that loads only contained 120 barrels of water.[118] Furthermore, Pearl asserts that some of the field tickets that made up the invoices may have been fraudulent or duplicative.[119]

The uncontroverted testimony at trial indicated that several entries on the Cannon invoices charged PDS for the hauling of 130 barrels of water; however, the corresponding disposal and delivery tickets show that loads only contained 120 barrels of water.[120] Furthermore, five separate field tickets indicated five hours of work were completed by the same driver on November 12, 2016, all of which were billed to PDS as part of the invoice.[121] Whether by fraud or misrepresentation, the duplicative nature of these field tickets serve to misrepresent the services provided. As such, this Court finds that the invoices negligently misrepresented the services actually provided by Cannon.

---

[116] TEX. NAT. RES. CODE § 91.101(4); TEX. ADMIN. CODE § 3.356(a)(3).
[117] ECF No. 22 at 15.
[118] ECF No. 22 at 15.
[119] January 24, 2024 – Courtroom Hearing (Opening Argument).
[120] January 24, 2024 – Courtroom Hearing (Dr. Myra Dria testifying); ECF No. 44-18.
[121] January 24, 2024 – Courtroom Hearing (Tye Christensen testifying).

Accordingly, Pearl has successfully rebutted the prima facie validity of Transcon's proof of claim. [122]  The burden now shifts to Transcon to prove the validity of Transcon's proof of claim by a preponderance of the evidence.[123]

### 2.      Transcon's Proof of Claim is Invalid

As detailed above, Transcon filed Amended Proof of Claim Number 2-2 as an unsecured claim for $103,717.08 for the total amount outstanding on Invoices sent to Pearl and applicable attorney's fees.[124] As discussed *supra*, the Court determined that the Amended Proof of Claim was prima facie valid. However, Pearl produced evidence sufficient to rebut the presumption of validity of Proof of Claim Number 2-2, and to establish that the Claim should be disallowed pursuant to § 502(b).

As detailed *supra*, the invoices indicate that Cannon has a right to payment from PDS.[125] The only outstanding claim remaining to support the validity of Transcon's proof of claim is its asserted quantum meruit claim, which was denied *supra*. Therefore, with the burden shifted back to Transcon, it is unable to show the validity of Proof of Claim Number 2-2 by a preponderance of the evidence. Since Transcon has failed to show the validity of Proof of Claim Number 2-2, the Claim will be disallowed in its entirety.

Accordingly, Transcon's Proof Claim Number 2-2 in 20-31585 for $103,717.08 is disallowed in its entirety.

### C.  Transcon's Affirmative Defenses

---

[122] As a party objecting to a proof of claim, Pearl "must produce evidence sufficient to rebut the presumption of validity and establish that the claim should be disallowed pursuant to § 502(b)." *In re Northbelt, LLC*, 630 B.R. 228, 248 (Bankr. S.D. Tex. 2020); *In re DePugh*, 409 B.R. 84, 97-98 (Bankr. S.D. Tex. 2009).
[123] *In re Northbelt, LLC*, 630 B.R. at 244 ("If the objecting party successfully presents enough evidence to meet that burden, the burden then shifts and the claimant must, by a preponderance of evidence, prove the validity of the claim.").
[124] 20-31585 Claims Register.
[125] ECF No. 44-17.

In its answer Transcon raised three affirmative defenses, to wit: (1) failure to state a claim, (2) mootness; and (3) statute of limitations.[126] Nevertheless, failure to state a claim is not an affirmative defense.[127] Furthermore, Transcon failed to provide evidence as to mootness or any applicable statute of limitations.[128] As such, because Transcon failed to meet its burden as to its affirmative defenses, they are denied.

## D. Pearl's request for attorney's fees pursuant to Tex. Prop. Code §§ 56.041 and 53.156

The El Paso Court of Appeals rendered judgment that Transcon's mineral property lien was invalid and remanded for a determination of attorney's fees to be awarded to Debtors.[129] TEX. PROP. CODE § 56.041 provides that mineral liens are enforced "in the same manner as a mechanic's . . . lien" under Chapter 53 of the Property Code.[130] Chapter 53 provides that "in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part, the court shall award costs and reasonable attorney's fees as are equitable and just."[131]

In turn, Chapter 53, which governs traditional mechanics'/materialmen's liens, provides that "the court may award costs and reasonable attorney's fees as are equitable and just" in proceedings to foreclose a lien or "in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part."[132] As the prevailing party in the proceeding to determine the

---

[126] ECF No. 23.
[127] *PNC Bank, Nat'l. Ass'n. v. SM & JH, LLC*, No 4:12-CV-597-JCH, 2012 U.S. Dist. LEXIS 98139, 2012 WL 2905047, at *2 (E.D. Mo. July 6, 2012)("failure to state a claim is not a proper affirmative defense but, rather, asserts a defect in Plaintiff's prima facie case."); *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp.2d 1283, 1292 ("Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case. Therefore, it is not properly asserted as an affirmative defense.").
[128] The burden of demonstrating mootness lies with the movant and it "is a heavy one." *Los Angeles County v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979); under Texas law, limitations is an affirmative defense on which the movant bears the burden of proof. *See, e.g, Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 867 (Tex. App. 1997, no writ) ("The statute of limitations is an affirmative defense.").
[129] ECF No. 44-4.
[130] ECF TEX. PROP. CODE § 56.041.
[131] TEX. PROP. CODE § 53.156.
[132] TEX. PROP. CODE § 53.156.

validity of Pearl's mineral property liens, the court deems it equitable and just to award costs and reasonable attorney's fees to Pearl.[133]

Accordingly, Pearl's request for reasonable attorney's fees pursuant to Tex. Prop. Code §§ 56.041 and 53.156 is granted.  Pearl is ordered to file an application for attorney's fees by no later than February 14, 2024.  Transcon will have until March 6, 2024, to file an objection to Pearl's request for attorney's fees.

## V.  CONCLUSION

A judgment consistent with the Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED February 20, 2024

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

---

[133] ECF No. 44-4.